O 91 (Rev. 11/82)

## CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

FILED
**FEB 1 3 2019**
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SADIKI DARWESHI STREETE | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>19MJ00480 |

Complaint for violation of Title 18, United States Code, Sections 1349 and 1028A

| NAME OF MAGISTRATE JUDGE<br>Honorable Charles Eick | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>unknown through the present | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN)<br>Unknown/Fugitive |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

### See Attachment

2019 FEB 13

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Kyle Weeks |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, United States Secret Service |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE⁽¹⁾<br>CHARLES F. EICK | DATE<br>February 13, 2019 |
|---|---|

⁽¹⁾ See Federal Rules of Criminal Procedure 3 and 54

AUSA Andrew Brown, 11ᵗʰ floor, x0102 *AB*        WARRANT        Detention Requested

**Attachment to Complaint**

## Count One (18 U.S.C. § 1349)

Beginning in or before 2017, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendant SADIKI DARWESHI STREETE ("defendant") and others conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344. The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendant and his co-conspirators would steal the identities and account information of victims of identity theft. Defendant and his co-conspirators would manufacture counterfeit credit cards using the victims' account information. Defendant and his co-conspirators would also manufacture counterfeit identity cards bearing the photographs of co-conspirators but the names of the victims of identity theft. Defendant and his co-conspirators would then use the counterfeit credit cards and identity cards to make purchases in the names of the victims. Federally-insured financial institutions defrauded as a result of this conspiracy include American Express, JP Morgan Chase Bank, Citi Bank, and Capital One Bank.

## Count Two (18 U.S.C. § 1028A)

Beginning in or before 2017, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendant SADIKI DARWESHI STREETE knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, as charged in Count One, knowing that the means of identification belonged to another actual person.

### AFFIDAVIT

I, Kyle Weeks, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the United States Secret Service ("USSS") and have been so employed since November of 2015.  My current station of duty is the Los Angeles Field Office, where I investigate matters concerning bank fraud, wire fraud, identity theft, money laundering, and other illegal financial transactions.

2.   While at the USSS, I have participated in numerous criminal investigations as either the case agent or an investigating agent.  In particular, I have participated in various aspects of criminal investigations, including:  bank records analysis, telephone records analysis, electronic surveillance, physical surveillance, search warrants, and arrests.  I have also interviewed defendants, confidential informants, and witnesses who had personal knowledge regarding the methods used to commit bank fraud.

3.   I am currently assigned to the Identity Theft and Economic Crimes (ITEC) Task Force, which is responsible for the investigation of various types of theft and fraud, including the manufacturing of counterfeit and fraudulent identification documents, the investigation of financial crimes (such as access device crimes, credit card fraud, check fraud, and the use of schemes to conceal and launder the proceeds of such crimes).  The ITEC is composed of USSS Special Agents, members of the

1

Postal Inspection Service, Homeland Security Investigations, Internal Revenue Service Criminal Investigation and US Treasury Inspector General for Tax Administration.

4.    To become a SA, I received eight months of training in Beltsville, Maryland, and training at the Federal Law Enforcement Training Center Criminal Investigator Training Program in Brunswick, Georgia.  After completing my training, I was initially assigned to the Financial Crimes Investigation squad.  I have been involved in about thirty investigations related to violations of federal bank fraud, wire fraud, and other financial crimes.  I have also spoken to many law enforcement agents regarding their experience in investigating financial crimes and identity theft.

## II.   PURPOSES OF AFFIDAVIT

5.    This affidavit is made in support of a criminal complaint and arrest warrant charging SADIKI DARWESHI STREETE ("STREETE"), with a violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, and 18 United States Code, 1028A Aggravated Identity Theft.

6.    The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is only intended to show that there is sufficient probable cause for the requested complaint, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all

conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

7.   On April 25, 2018, agents with the USSS and deputies with the Los Angeles County Sheriff's Department ("LASD") served a federal search warrant at the address of 6940 Sepulveda Blvd. Apt. #304 Van Nuys, CA 91405 (the "SUBJECT RESIDENCE"), where STREETE was staying, for evidence of 18 U.S.C 1029, 1028, 1344, and 1349.

8.   During the April 25, 2018, search agents and deputies found numerous counterfeit access devices, fraudulent identifications, printers designed specifically for manufacturing access device cards, card read/write encoders, electronic devices including computers/cell phones, white plastic blank card stock, and numerous rolls of unsealed access device tipping foil.

9.   My belief that STREETE lived at the SUBJECT RESIDENCE is based in part on: (1) his presence at that location at the time of the search warrant and the fact that his personal belongings, including his iPad and wallet, were recovered inside; (2) During the search numerous counterfeit identifications bearing STREETE's picture were found; (3) During the search numerous access devices bearing STREETE's name were found; (4) One of the counterfeit identifications bearing STREETE's picture with victim F.D.'s name was used to lease the SUBJECT RESIDENCE, and (5) mail matter bearing STREETE's name and the SUBJECT RESIDENCE address were found.

10.  During the search of the SUBJECT RESIDENCE, agents
with the USSS interviewed STREETE who admitted to the following:
(1) that he was involved in fraudulent access device fraud; (2)
that he purchased credit card numbers off the website
briansclub.at and dumpsclinique.am; (3) that he would put the
account information he purchased from these sites onto old
credit cards using the "EasyMSR" application on his phone; (4)
Sometimes another person would use printing equipment to create
high quality counterfeit cards for STREETE.

## IV.  STATEMENT OF PROBABLE CAUSE

11.  Based on my review of pictures, videos, my
conversations with other law enforcement officers who
participated in this investigation, my conversations with
American Express investigators, my review of bank documents, my
review of lease documents, my conversations with victims, and my
own observations and knowledge of the investigation, I know the
following:

### A.  Search Warrant for the SUBJECT RESIDENCE

12.  On April 23, 2018, the Honorable Karen Stevenson found
probable cause to issue a search warrant for the SUBJECT
RESIDENCE.  The Search Warrant authorized law enforcement to
search, among other things, digital devices found within the
SUBJECT RESIDENCE for evidence, fruits and instrumentalities of
the Subject Offenses.

13.  The Search Warrant was based in part on law
enforcement's probable cause to believe that the SUBJECT
RESIDENCE contained an identification and credit card

4

manufacturing plant with all the tools needed to make fraudulent credit cards and identifications.

14.   On April 25, 2018, the USSS and LASD executed the aforementioned federal search warrant at the SUBJECT RESIDENCE. Agents found that STREETE possessed inside of his home to include the kitchen/dining area and his bedroom approximately sixty-seven suspected counterfeit access devices bearing STREETE's name; twenty-nine suspected counterfeit access devices bearing the names of individuals other than STREETE, and approximately twenty-three counterfeit driver's licenses. These driver's licenses showed STREETE's photo, but the personal identifying information of individuals who appeared to have no connection to the SUBJECT RESIDENCE.

15.   Access devices found at the SUBJECT RESIDENCE primarily contained bank identification numbers ("BINs")[1] of the following financial institutions: American Express, JP Morgan Chase Bank, Citi Bank, and Capital One Bank. Through my involvement with other financial crimes cases, and my own searches of the Federal Deposit Insurance Corporation ("FDIC") website, I know the aforementioned banks are all federally insured by the FDIC.

16.   Some of the counterfeit driver's licenses with STREETE's picture had names which matched those of the aforementioned twenty-nine access devices. In my training and experience it is common for criminals to acquire identification

---

[1] BIN numbers are the first six digits on a credit or debit card, these digits represent the financial institution that issued the card.

with their picture and other's names to facilitate fraudulent transactions. Specifically it is common for those involved in bank fraud to acquire a counterfeit identification bearing their victims name so they can access the victim's accounts with less hassle.

17. During the search of the SUBJECT RESIDENCE law enforcement found STREETE's genuine California driver's license in his wallet on a shelf in his closet, as well as mail from Wells Fargo in STREETE's name with the SUBJECT RESIDENCE address. Law enforcement also found an iPad on the shelf in the closet of STREETE's bedroom, which would later, during forensic analysis, be identified as STREETE's iPad. Additionally, through my review of reports, I know STREETE was present at the time the SUBJECT RESIDENCE was searched.

B. Search of STREETE's iPad

18. On or about December 31, 2018, I completed a search of the aforementioned iPad found in STREETE's closet, pursuant to an extension to search digital devices filed in regard to the original search warrant.

19. During the review of the forensic image of the iPad I found pictures of STREETE, Chat messages from the username "sstreete" and "Showa Streete." The above pictures, usernames, and location that the iPad was found during the search of the SUBJECT RESIDENCE leads me to believe STREETE was the owner of the iPad.

20. During my review of the forensic image, I also reviewed the web history of the iPad and found that it had been

6

used hundreds of times to visit websites like: validsu.ru/dumps, mrgreen.mn/dumps, goodshopbiz.net/dumps, and goswipe.name/normal/dumps/checkout. Based on my training and experience from other bank fraud investigations I know "dumps" is a term for bulk credit card account information and personal identifiable information ("PII"). I know criminals involved in bank fraud often visit websites like these hosted in Russia and other countries to purchase account or victim information.

**C.    Review of access devices and identifications found at the SUBJECT RESIDENCE**

21.   During the course of this investigation, I reviewed the approximately sixty-seven access devices found at the SUBJECT RESIDENCE. Two of the sixty-seven cards had the name of F.D. and appeared to be issued by American Express.

22.   On or about February 2, 2019, I contacted American Express investigators and provided them the cards ending "2008" and "8026" embossed with the name F.D. American Express stated to me that the card ending "8026" belonged to victim K.B. and the card ending "2008" belonged to victim A.G.

23.   I reviewed the approximately twenty-three driver's licenses with STREETE's picture. During my review I found Nevada driver's license bearing the name of F.D. which was also shown on the two American express cards noted above.

24.   Based on the information provided by American Express regarding card "2008" and "8026" bearing the name F.D. and not the true account holder's name I concluded these cards were counterfeit.

7

**D.      Review of the lease for the SUBJECT RESIDENCE**

25.   During the investigation, Special Agent Persall
acquired the lease documents for the SUBJECT RESIDENCE. I
reviewed this lease document and noted the lease had been
completed using the name F.D. Additionally the lease documents
contained F.D.'s PII to include date of birth, social security
number, and a driver's license number.

26.   I compared the Nevada driver's license that showed
STREETE's picture to the information provided on the lease for
the SUBJECT RESIDENCE and confirmed the information on the
Nevada driver's license was used to complete the lease contract.
The PII of F.D. including date of birth, address, and driver's
license number were all used to apply for the lease.

**E.      Interview of Victim A.G.**

27.   On or about February 2, 2019, I telephonically
interviewed victim A.G., who stated that the American Express
card ending "2008" was an old card of his and he had been the
victim of fraud on that card in the past.   Victim A.G. stated he
thought the fraud took place in California.   I asked victim A.G.
if he ever allowed STREETE to possess or use his credit card.
Victim A.G. stated to me he never allowed anyone to use or
possess his credit card.

**F.      Interview of Victim F.D.**

28.   On or about February 5, 2019, I telephonically
interviewed victim F.D.   I provided victim F.D. the address from
the aforementioned Nevada driver's license bearing his name, but
STREETE's picture. F.D. stated to me that this was a previous

8

address he resided at, but not his current one. I provided F.D.
the date of birth on the Nevada driver's license and he
confirmed that was his true date of birth. I told F.D. the
identification number that was on the Nevada driver's license
and he stated that was not the number on his current driver's
license.

29.   I asked F.D. if he was aware of any fraud that had
been perpetrated against him. F.D. stated he had been the victim
of fraud in the past and had placed credit freezes with the
major credit bureaus. F.D. stated to me that he had received a
letter from a debt collection law firm approximately one week
ago, stating that he owed approximately $17,000 regarding an
apartment in Los Angeles.

30.   I asked F.D. if he still had this letter and if he
could provide me the name of the property that stated he owed
$17,000. F.D. left the phone briefly to retrieve the letter and
then told me the address on the letter was the address for the
SUBJECT RESIDENCE. I asked F.D. if he could scan and email me
this letter and he stated he would.

31.   I then asked F.D. if he ever allowed STREETE to use or
possess his personal information. F.D. stated he did not allow
anyone to use his personal information. I asked F.D. if he ever
allowed STREETE to use his driver's license or his information
on a driver's license, and again F.D. stated he did not. I asked
F.D. if he allowed STREETE to lease an apartment using his PII,
and again F.D. stated he had not.

9

32. On February 7, 2019, I called F.D. back and asked him to confirm the social security number on the lease for the SUBJECT RESIDENCE. F.D. stated the social security number on the lease was his true and correct social security number.

**G.   STREETE Confessed on the Day of the Search**

33. On April 25, 2018, during the search of the SUBJECT RESIDENCE, Assistant to the Special Agent in Charge Mayo and Special Agent Jensen interviewed STREETE, who was in the SUBJECT RESIDENCE at the time of the search.

34. STREETE stated he knew people in California who were making good money with their involvement in fraudulent activity. STREETE stated he needed a way to make income and became involved in purchasing credit/debit card information from various websites like: briansclub.at and dumpsclinique.am.

35. STREETE told agents he would purchase card numbers and then use an application called "EasyMSR" on his cellphone to re-encode old cards that he possessed. STREETE stated once the cards were encoded he would test them on vending machines to make sure the numbers were valid. STREETE stated that if the cards worked he would then use them to make purchases at Target. STREETE stated any purchases he made from Target he would then return at a different store for gift cards.

36. STREETE stated that periodically he would contact his friends using the "Wickr" application and sell them gift cards. I know through my involvement in other investigations that Wickr is an encrypted, secure instant message service. STREETE stated

he would use Wickr to set up a meet time and place to conduct the transaction.

37.   STREETE told agents he would usually only buy small amounts of numbers for around one to three dollars at a time, because he desired to stay under the radar. STREETE stated sometimes he would buy a batch of good numbers, ones he believed he could use for $1,000 or more. STREETE stated when he bought the higher quality numbers he would then have someone else make a new cloned credit card with matching numbers instead of using an older card. STREETE stated he has not worked since living in California and makes purchases from proceeds of his fraud activity.

**H.   STREETE Moved After the Search and No Records Show a Legitimate Address for Him**

38.   On or about August 21, 2018, I contacted STREETE at the only phone number he had provided to law enforcement. I told STREETE I needed him to pick up items that were seized from the SUBJECT RESIDENCE. STREETE agreed to meet me on August 23, 2018, at the United States Post Office located at 1055 N Vignes St. Los Angeles, CA 90012.

39.   On August 23, 2018, STREETE did not show up to the prearranged meeting. I have called STREETE and sent numerous text messages to STREETE since August and have not received a response.

40.   On multiple occasions I called STREETE's phone number and it rang into the voice mail box which stated the phone number was assigned to a TextNow subscriber. I reviewed

TextNow's website and learned TextNow provides Voice over Internet Protocol, or VOIP, services. TextNow's websites states it provides a domestic phone number and free VOIP calls to any domestic number. Based on my training and experience I know VOIP services are regularly used by criminals involved in bank fraud. VOIP services typically require minimal subscriber information, sometimes only an email address. Further phone numbers associated with VOIP services can typically be changed easily from call to call and "thrown away" as necessary.

### STREETE Has No Wages or Address Record

41.  On or about January 30, 2019, analysts with the United States Postal Inspection Service ran STREETE through California Employment Development Department ("EDD") databases which showed STREETE has no address or employer on file with the State of California and has not reported any wages.

### STREETE Leased His Last Apartment Under a Stolen Identity

42.  During the search of the SUBJECT RESIDENCE, twenty-three identifications with STREETE's picture were found with names other than STREETE. STREETE has used at least one of these identifications to lease an apartment. Based on my training and experience, I know services such as internet, utilities, and telephone, among others, are reported to law enforcement sensitive databases. When a subject has the ability to assume another's identity to acquire services and shelter it can make them significantly harder to find.

**STREETE Used a Commercial Maildrop as His DMV Address**

43.   According to DMV records, on or about November 5, 2018, STREETE applied for a new California driver's license. The address listed on this driver license shows: 21781 Ventura Blvd. Apt 152, Woodland Hills, CA 91364. On or about December 4, 2019, I went to this address and discovered it was a private mail box service business called "The Postal Annex." I pulled the application STREETE filled out to rent mail box #152 and saw he provided his physical address as 4420 W Saraha St. Unit 1 Burbank, CA 91505. Using law enforcement databases, I realized this is an extremely old address that STREETE likely used in 2016. Based on my training an experience, I know criminals often provide the Department of Motor Vehicles ("DMV") with addresses in which they do not actually reside to evade law enforcement.

**STREETE Made International Travel Arrangements He Abandoned**

44.   On or about February 8, 2019, I spoke with United States Customs and Border Protection ("CBP") supervisor Lombrano and provided STREETE's name and date of birth. Lombrano told me STREETE was manifested to fly from LAX - Los Angeles to SJD — Los Cabos on November 7, 2017, but never boarded the air craft. Additionally Lombrano told me that STREETE was manifested to fly from JFK - John F Kennedy to YYZ - Toronto on January 30, 2018, and further STREETE was manifested to fly from JFK - John F Kennedy to YUL - Dorval, Montreal on June 12, 2018. Again Lombrano told me that STREETE did not board either flight. Based on my training and experience I know criminals who have the

ability to flee the country might do so when charged with an indictment, information, or complaint.

**STREETE Ignored My Warning that He Had an Arrest Warrant**

45.   On January 31, 2019, I left a message on STREETE's VOIP telephone to the effect that an arrest warrant had already been issued for him (which was not true), and that he needed to turn himself in and that I could arrange that safely. I also sent a text message to the VOIP telephone stating the same immediately after leaving the aforementioned voice mail. To date, STREETE has not responded to this message or contacted me to turn himself in.

## V.   CONCLUSION

46.   Based on the foregoing, there is probable cause to believe that STREETE committed violations of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, and 18 United States Code, 1028A, Aggravated Identity Theft.

/s/

KYLE WEEKS
Special Agent
United States Secret Service


Subscribed to and sworn before
me this 13th day of February,
2019.

CHARLES F. EICK

UNITED STATES MAGISTRATE JUDGE

14